UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
FLORIDA PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Charles Rataj v. 3M Company*<br>Case No. 7:20-cv-64733-MCR-GRJ | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Case Management Order Nos. 31 and 45, MDL Dkt. 2304 and 3079, Plaintiff, Charles Rataj, ("Plaintiff") respectfully moves the Court for an order granting Plaintiff summary judgment on Defendants' affirmative defenses relating to government fault, Defenses and Affirmative Defenses ¶¶ 17-20. MDL Dkt. 959 at 96, 99-100. As set forth in the accompanying memorandum of law, Plaintiff is entitled to summary judgment on these affirmative defenses as to all claims asserted in the Short Form Complaint, Dkt. 6. This motion is based on the accompanying memorandum of law, declaration, and exhibits in support of Plaintiff's motion for summary judgment, as well as all the files, records, and prior proceedings herein.

## INTRODUCTION

For 16 years, Defendants sold to the public and the United States military a

1

hearing protection device that they knew was defective and dangerous. Fortuitously, the defects and dangers of the Combat Arms Earplug Version 2 ("CAEv2") came to light in 2015, after Defendants filed a sham patent lawsuit against their competitor. Nearly 300,000 Plaintiffs now seek judgment against Defendants for hearing loss, tinnitus, and related injuries. Throughout this litigation, Defendants have refused to accept responsibility for their actions. They previously invoked the government contractor defense, claiming "the government made me do it" in an effort to avoid liability entirely. With that door closed, *see* MDL Dkt. 1280, Defendants now seek another bite at the apple by invoking several affirmative defenses related to government fault. *See, e.g.*, Amended Answer to Master Long Form Complaint, MDL Dkt. 959 at 99-100, Defenses and Affirmative Defenses ¶ 17 (alleging Plaintiff's damages "may have been caused by the negligent acts or omissions, in whole or in part, of . . . the United States").

Relevant here, Defendants attempt to blame the government by invoking (1) the sophisticated intermediary doctrine; (2) superseding cause; and (3) apportionment (collectively, "government-fault defenses"). *Id.* at ¶¶ 17-20. Defendants cannot blame the military or Plaintiff for their own misdeeds. Plaintiff is entitled to judgment on the government fault defenses, consistent with the Court's prior orders.

# BACKGROUND

1. **Plaintiff was injured by the CAEv2.**

   Plaintiff served in the Vermont National Guard Plaintiff from 1992-2015. Ex. PX1 Pl. Depo. at 65:19-66:2. Throughout his service, Plaintiff used the CAEv2 while exposed to dangerous levels of noise. Due to the CAEv2, Plaintiff suffers from hearing loss and tinnitus. Plaintiff brings negligence, design-defect, failure-to-warn, warranty, misrepresentation, fraud, unjust enrichment, consumer-protection, and punitive-damages claims. Dkt. 6.

2. **Defendants attempt to escape liability by blaming the United States.**

   On February 3, 2020, Defendants filed an Amended Answer to Plaintiffs' Master Long Form Complaint raising numerous boilerplate defenses. MDL Dkt. 959. Three of those defenses seek to blame the nonparty United States. First, Defendants seek to avoid liability for Plaintiff's warning claims through the sophisticated intermediary doctrines. *Id.* Defenses and Affirmative Defenses ¶ 18. Second, Defendants claim the United States military was a superseding cause of Plaintiff's injuries. *Id.* Defenses and Affirmative Defenses ¶¶ 19, 20. Third, Defendants seek to apportion fault to the military based on its alleged negligence. *Id.* Defenses and Affirmative Defenses ¶¶ 17, 20.

3. **The parties dispute whether Vermont or Mississippi law applies to Plaintiff's case.**

   The Parties dispute the applicable law; Plaintiff maintains that Vermont law

applies, Defendants contend that Mississippi law applies. Dkts. 12, 17, 19.

## ARGUMENT

### I. The sophisticated intermediary and other intermediary defenses do not protect manufacturers of consumer goods.

Plaintiff seeks summary judgment on Defendants' intermediary defenses. *See* MDL Dkt. 959 at 99-100, Defenses and Affirmative Defenses ¶ 18. Defendants' intermediary defenses have no place in this case under either Vermont or Mississippi law. Whether under the learned intermediary, sophisticated intermediary or bulk supplier doctrine, no Vermont or Mississippi court would extend these doctrines to consumer goods such as the CAEv2. Accordingly, Plaintiff is entitled to summary judgment on all three of Defendants' intermediary defenses.

### A. Plaintiff is entitled to summary judgment on the learned intermediary defense under both Vermont and Mississippi law.

"Vermont has neither adopted nor rejected the learned intermediary doctrine." *Kellogg v. Wyeth*, 762 F.Supp.2d 694, 700 (D. Vt. 2010); *Drake v. Allergan, Inc.*, 63 F.Supp.3d 382, 390 (D. Vt. 2014) ("The learned intermediary doctrine has not been accepted or rejected by the Vermont Supreme Court."). The Vermont District Court in *Leavitt v. Ethicon*, however, "predicted" that Vermont would adopt the learned intermediary doctrine. 524 F.Supp.3d 360, 368-70 (D. Vt. 2021). In making this prediction, the court characterized the learned intermediary doctrine as arising from "[t]he obligation of a manufacturer to warn about risks attendant to the use of drugs

and medical devices that may be sold only pursuant to a health-care provider's prescription." *Id*. at 369-70 (quoting Restatement (Third) of Torts: Prods. Liab. § 6 cmt. b (1998)). The *Leavitt* court noted that "[t]he 'learned intermediary doctrine' does not apply 'in certain limited therapeutic relationships where the physician or other health-care provider has a much-diminished role as an evaluator or decisionmaker.'" *Id*. at 370 (quoting Restatement (Third) of Torts: Prods. Liab. § 6 cmt. b). Accordingly, even if Vermont adopted the learned intermediary doctrine, Vermont would not extend the doctrine to the CAEv2, which is an over-the-counter consumer good and not a drug or device available only through a physician. *See id*.

Mississippi has codified the learned intermediary defense, but it is explicitly limited in its application to manufacturers of prescription drugs and devices. *See* Mississippi Products Liability Act ("MPLA"), Miss. Code Ann. § 11-1-63(c)(ii) (applying to cases involving "a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person").

Although the MPLA does not preclude application of common law defenses, the only non-prescription drug cases discussing the learned intermediary theory involve dangerous chemicals and hazardous materials that injured employees and the manufacturer relied on the employer to warn the employee of the product's dangers. *See,e.g.*, *Swan v. I.P., Inc.*, 613 So.2d 846, 852–56 (Miss. 1993). These

sophisticated intermediary or sophisticated user cases are discussed below.[1]

Regardless, because the CAEv2 is an over-the-counter product—not a drug or device available only with a prescription, nor a dangerous chemical or hazardous material—the intermediary defense fails here. *See* Restatement (Third) of Torts: Prods. Liab. § 6(a) ("A prescription drug or medical device is one that may be legally sold or otherwise distributed only pursuant to a health-care provider's prescription."); *see also Swan* at 852-56. There is no indication that Mississippi would extend either the common law or statutory doctrine to the CAEv2 or any other consumer good that is not a prescription medication, dangerous chemical or hazardous material. *See, e.g.*, *Swan* at 852-56.

### B. Plaintiff is entitled to summary judgment on the sophisticated intermediary or sophisticated user doctrines.

Vermont has not adopted the sophisticated intermediary or user doctrines, and Vermont statutory law and jurisprudence are silent regarding the doctrine. Consistent with this Court's prior rulings, the Defendants' sophisticated intermediary defense should be dismissed.

Unlike Vermont, "Mississippi recognizes both a statutory and the common-

---

[1] The Mississippi cases that discuss "learned intermediary" outside the context of pharmaceutical drugs and medical devices alternate between calling the doctrine "learned intermediary," "sophisticated user" or "sophisticated intermediary." *See Union Carbide v. Nix, Jr.*, 142 So. 3d 374, 386 (Miss. 2014) (citing *Swan v. I.P., Inc.*, 613 So. 2d 846, 851-56 (Miss. 1993)).

law 'sophisticated-user' defense," but this defense is limited to industrial products and not applicable to a consumer good like the CAEv2. *Union Carbide Corp. v. Nix, Jr.*, 142 So.3d 374, 385 (Miss. 2014) (quoting *Miss. Valley Silica Co., Inc. v. Eastman,* 92 So.3d 666, 671 (Miss. 2012)). "The statutory sophisticated-user defense provides that the manufacturer is not liable 'if the danger posed by the product is known ... to the user or consumer of the product, or should have been known ... to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.'" *Union Carbide Corp.*, 142 So. 3d at 386 (quoting Miss.Code Ann. § 11–1–63(e)). The common law differs in that "[t]o use the common law sophisticated-user defense, a manufacturer must provide some evidence that it actually provided the 'learned intermediary' in question with any information or warning." *Id.* at 386.

Mississippi's application of the sophisticated user has been limited to industrial goods or goods solely used by professional users—and not the public at large. In *Swan,* a schoolteacher sued the manufacturer/supplier of roofing chemicals for failing to warn her about the dangers of polyurethane foam when a professional roofing contractor had applied the foam on the school's roof, exposing her to chemicals. 613 So. 2d at 851-52. In assessing whether to apply the defense, the Mississippi Supreme Court analyzed prior cases where the intermediary defense had

been asserted successfully and concluded the defense had been applied only where the end-user was either a qualified professional, an employee of an industrial user or a patient prescribed pharmaceutical drugs. *Id.* at 852-54. The court ultimately reversed summary judgment in favor of the defendant-manufacturer based on the defense, finding that the evidence was insufficient whether the intermediary—an experienced polyurethane roofing applicator—was a sophisticated user or whether the manufacturer provided him with information regarding the foam. *Id.* at 857; *see also Union Carbide*, 142 So. 3d at 385-86 (assessing but rejecting the sophisticated user defense for an asbestos manufacturer against a plaintiff-employee who was exposed while working for his intermediary employer as a driller); *Mississippi Valley Silica Co. v. Eastman*, 92 So. 3d 666, 667 (Miss. 2012) (holding sophisticated user jury instruction warranted under Mississippi common law for silica sand manufacturer against plaintiff-employee injured while employed); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 676 (5th Cir. 1999) (applying the sophisticated user defense to manufacturer of heavy aromatic distillate when intermediary-employer confirmed receipt and understanding of manufacturer's warnings and that employer would pass along warnings to employees).

Mississippi's limited application of the sophisticated intermediary or user defense is consistent with the Court's prior rulings and holdings that such intermediary defenses are not available for the CAEv2. These defenses are

inapplicable to consumer products such as the CAEv2 because "the underlying rationale for the intermediary defense is lost where . . . users could purchase and use the product without an intermediary." *See, e.g.*, *In re 3M Combat Arms Earplugs Prods. Liab. Litig.*, 7:20-cv-131, Dkt. 192 at 8–9 (N.D. Fla. Apr. 27, 2021) (*Hacker*) (citations omitted); *Beal*, 7:20-cv-6, Dkt. 145 at 9 (same). "When a plaintiff could have obtained the product from the normal consumer marketplace, it would be illogical to treat the plaintiff differently based on the fact that he received the product from an intermediary."

Moreover, unlike certain risks that are well known within industries, such as silica sand, *Eastman*, 92 So. 3d at 667-68, the CAEv2's defects, "including *imperceptible* loosening due to the dual sided nature of the plug, were not widely known throughout the hearing conservation industry for many years." *Wilkerson*, 7:20-cv-35, Dkt. 133 at 5. Rather, "Defendants had superior knowledge about the risks associated with the CAEv2 and had the means to warn individual users through its packaging. *Id.* at 6. As such, any argument that Defendants are excused from their duty to warn Plaintiff under Mississippi's sophisticated user defense fails as a matter of law. *See id.*

In sum, the Court should hold that the supreme courts of Vermont and Mississippi would not extend the sophisticated intermediary or user defenses to a consumer product like the CAEv2.

### C. Vermont does not recognize a bulk supplier or component parts supplier defense, and Mississippi's defense would be inapplicable here.

While some states recognize a "bulk supplier" defense applicable to bulk sellers of raw materials or component parts, *see In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 545 F.Supp.3d 1239, 1244-46 (N.D. Fla. 2021) (citing authorities), Vermont has neither adopted nor rejected this defense. Mississippi has applied the component parts doctrine, but the defense would not apply here. *See Scordino v. Hopeman Brothers, Inc.*, 662 So. 2d 640 (Miss. 1995); *Coca Cola Bottling Co. v. Reeves*, 486 So. 2d 374 (Miss. 1986). As this Court has repeatedly found, Defendants did not supply raw materials or non-defective component parts to another manufacturer for resale, but instead "designed, manufactured, and marketed the end product at issue in this case—the CAEv2." *See, e.g., Baker*, 7:20-cv-39, Dkt. 178 at 11; *Camarillorazo*, 7:20-cv-98, Dkt. 83, at 5; *Wayman*, 7:20-cv-149, Dkt. 98 at 3-4. For the same reasons, Plaintiff is entitled to summary judgment on the bulk supplier defense.

### II. Defendants' superseding-cause defense fails because the United States Army's alleged failure to fit and train and warn was foreseeable.

Plaintiff also seeks summary judgment on Defendants' superseding-cause defense as to the United States. *See* MDL Dkt. 959 at 99-100, Defenses and Affirmative Defenses ¶¶ 17, 19, 20. Under Vermont law, for superseding cause to relieve a tortfeasor of liability, the cause must be "a new and independent force that

10

breaks the chain of causal connection between the original wrong and the ultimate result." *Estate of Sumner v. Dep't Social & Rehab. Servs.*, 162 Vt. 628, 629, 649 A.2d 1034, 1036 (1994) (citing *Paton v. Sawyer*, 134 Vt. 598, 600-01, 370 A.2d 215, 217 (1976)). "Whether or not the negligence of a third person may or may not amount to such an intervening cause turns on the issue of whether or not some such negligent act or intervention was something the original actor had a duty to anticipate." *Id*. (quoting *Paton*, 134 Vt. at 601, 370 A.2d at 217). "[I]f the initial negligence creates a situation making it likely that some other force or action will occur and bring about harm, responsibility remains with the original actor." *Dodge v. McArthur*, 126 Vt. 81, 84, 223 A.2d 453, 455 (1966). Foreseeability "is the key issue to consider when deciding whether it is an 'intervening act' in the sense that it should absolve a prior actor of liability." *Lexington Ins. Co. v. Rounds*, 349 F.Supp.2d 861, 867 (D. Vt. 2004).

Likewise, under Mississippi law, for an intervening act to relieve a tortfeasor of liability, the intervening act must be an independent act from the original actor's negligence that severs the connection between the original actor's conduct and the plaintiff's injury as a matter of law. *Lift-All Co., Inc. v. Warner,* 943 So.2d 12, 17 (Miss. 2006). For an intervening act to relieve the original tortfeasor from liability, the act cannot be a foreseeable consequence of the original act of negligence. *Id.*

Although proximate cause is ordinarily an issue for the jury, a superseding

cause defense fails as a matter of law in Vermont where "reasonable minds" would conclude that the subsequent acts or omissions at issue were foreseeable, *see Estate of Sumner*, 162 Vt. at 629, 649 A.2d at 1036 (quoting *Roberts v. State*, 147 Vt. 160, 163-64, 514 A.2d 694, 696 (1986), and in Mississippi where the chain of causal events following the defendant's conduct is foreseeable, *Southland Management Co. v. Brown ex rel. Brown,* 730 So.2d 43, 47 (Miss. 1998).

That holds true here. Defendants have not proffered any evidence to create a genuine dispute of material fact about the foreseeability of the Army's failure to fit, train, and warn. In fact, the undisputed evidence proves Defendants knew the military did not always train or warn soldiers. *E.g.*, Ex. A (P-GEN-954) (internal emails about article stating, inter alia, that the military had "too few [audiologists] to explain . . . how to wear earplugs to thousands of Marines"). This is unsurprising given the realities of warfare. *See* Ex. D (D-GEN-565) (noting the "CAE began to be issued to all deploying soldiers in 2004"). It is beyond dispute that any failure of the Army to fit, train, and warn its servicemembers is not extraordinary, unforeseeable, or intentional—as this Court has consistently held in prior cases. *See, e.g.*, *Adkins*, 7:20-cv-12, Dkt. 57 at 4-9; *Palanki*, 3:19-cv-2324, Dkt. 81 at 5-7; *Camarillorazo*, Dkt. 83 at 7-10; *Blum*, 7:20-cv-122, Dkt. 56 at 5-8; *Sloan*, 7:20-cv-1, Dkt. 73 at 5-6; *Wilkerson*, Dkt. 133 at 6-9. And for good reason. "An employer's failure to warn an employee of the hazards posed by a product used in the workplace

12

generally cannot be deemed a superseding cause which exonerates the product manufacturer from liability to the employee for its failure to warn of those hazards, at least where there was nothing highly extraordinary about the employer's failure to maintain a safe workplace." 63A Am. Jur. 2d Products Liability § 1073.

Moreover, the alleged negligence of the Army and Defendants are of the same kind (failure to warn of the CAEv2's dangers) and caused the same injury (improper fit and thus inadequate protection and hearing loss). By depriving the military of the means to adequately fit, instruct, and warn servicemembers about the CAEv2, it was eminently foreseeable to Defendants that the military's alleged failure to warn Plaintiff was not a "new" or "independent" cause of the risk and resulting harm to Plaintiff. *See Estate of Sumner*, 162 Vt. at 629, 649 A.2d at 1036. Accordingly, the Court should grant Plaintiff's motion for summary judgment on Defendant's superseding cause defense. *See Vaughn*, 7:20-cv-134, Dkt. 94 at 8.

### III. Vermont prohibits apportioning fault to nonparty the United States.

Plaintiff seeks summary judgment on Defendants' apportionment defense as to nonparty the United States. Under Vermont law, apportionment of damages is only proper among "those joined in the same action." *See Levine v. Wyeth*, 83 Vt. 76, 101, 944 A.2d 179, 195 (2006) (quoting *Plante v. Johnson*, 152 Vt. 270, 273, 565 A.2d 1346, 1347-48 (1989)). Vermont's comparative fault statute, 12 V.S.A. § 1036, expressly applies to "defendant or defendants," and the Vermont Supreme

Court has affirmatively held that the statute provides for apportionment only among named defendants. *Levine*, 944 A.2d at 195; *see Plante*, 152 Vt. at 273, 565 A.2d at 1347 (finding that plain language of § 1036 suggests that only those joined as parties to a case should be considered in apportioning damages); *McCormack v. State*, 150 Vt. 443, 447, 553 A.2d 566, 569 (1988) (granting new trial where jury interrogatories requested allocation of fault to include the state, which was no longer a party after being dismissed pursuant to a judgment notwithstanding the verdict). The United States is not and has never been a named party in this suit. Accordingly, the Court should grant summary judgment for Plaintiff on this defense.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment on Defendants' government-fault defenses.

Dated: July 21, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Nicole C. Berg*
　　　　　　　　　　　　　　　　　　　　　Nicole C. Berg (IL Bar #6305464)*
　　　　　　　　　　　　　　　　　　　　　ncb@kellerpostman.com
　　　　　　　　　　　　　　　　　　　　　KELLER POSTMAN LLC
　　　　　　　　　　　　　　　　　　　　　150 N. Riverside Plaza, Suite 4100
　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　　(312) 741-5220
　　　　　　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*

　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*

## **REQUEST FOR ORAL ARGUMENT**

Plaintiff does not believe that oral argument is necessary but is prepared to present any amount of oral argument that would assist the Court.

*/s/ Nicole C. Berg*
Nicole C. Berg

# CERTIFICATE OF COMPLIANCE
# WITH LOCAL RULES 7.1(F) AND 56.1(E)

I hereby certify that this motion complies with the word limit of Local Rules 7.1(F) and 56.1(E) and contains 3,114 words.

*/s/ Nicole C. Berg*
Nicole C. Berg

# CERTIFICATE OF COMPLIANCE
# WITH LOCAL RULES 7.1(B) AND 7.1(B), (C)

Pursuant to Local Rule 7.1(B), counsel for Plaintiffs and Defendants Remand Leadership and Special Master Adriane Theis conferred on July 12, 2022, regarding the foregoing motion but were unable to resolve issue with Defendants.

*/s/ Nicole C. Berg*
Nicole C. Berg

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

<em><u>/s/ Nicole C. Berg</u></em><br>
Nicole C. Berg